Donald S. Zakarin
dzakarin@pryorcashman.com
Frank P. Scibilia
fscibilia@pryorcashman.com
Erich C. Carey
ecarey@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100
*Attorneys for Sony/ATV Music Publishing, LLC
and the EMI Music Publishing Companies*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- x
:    No. 12 Civ. 8035 (DLC) (MHD)
:
IN RE PETITION OF PANDORA MEDIA, INC.    :
:
:
:
:
:
-------------------------------------------------- X

*Related To*     :
UNITED STATES OF AMERICA,     :    No. 41 Civ. 1395 (DLC) (MHD)
:
          Plaintiff,     :
:
      v.     :
:
AMERICAN SOCIETY OF COMPOSERS,     :
AUTHORS AND PUBLISHERS,     :
:
          Defendant.     :
:
-------------------------------------------------- x

**PUBLISHERS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO INTERVENE IN THE
ABOVE-CAPTIONED MATTER, *NUNC PRO TUNC***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................................ 2

ARGUMENT ................................................................................................. 6

I.   THE PUBLISHERS EASILY MEET THE LIBERAL STANDARD
     FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a) ........................................ 6

     A. The Publishers Timely Moved To Intervene ................................................. 7

     B. The Publishers' Exclusive Copyright Rights Have Been
        Truncated By the Court's Summary Judgment Order ................................. 11

     C. The Publishers' Rights to Protect Their Copyright Rights
        May Be Impaired If They Are Not Permitted to Intervene .......................... 13

     D. ASCAP Cannot Adequately Represent the Publishers ................................. 14

II.  ALTERNATIVELY, THE PUBLISHERS SHOULD BE PERMITTED
     TO INTERVENE PERMISSIVELY UNDER RULE 24(b) .......................................... 16

CONCLUSION ............................................................................................. 17

i

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(s)**

*CBS, Inc. v. Snyder,*
    798 F. Supp. 1019 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d Cir. 1993) ...........................15

*City & Borough of Juneau v. Ctrs. for Medicare & Medicaid Services,*
    No. 3:04-cv-152JWS, 2007 U.S. Dist. LEXIS 12309 (D. Alaska Feb. 21, 2007)............10

*Dow Jones & Co. v. United States Dep't. of Justice,*
    161 F.R.D. 247 (S.D.N.Y. 1995) .....................................................................................7

*FTC v. First Capital Consumer Membership Services, Inc.,*
    206 F.R.D. 358 (W.D.N.Y. 2001)...................................................................................15

*Farmland Dairies v. Commissioner of New York State Department of Agricultural & Mkts.,*
    847 F.2d 1038 (2d Cir. 1988).........................................................................................7

*Fleet Capital Corp. v. Merco Joint Venture, LLC,*
    No. 02 CV 0279 (ILG), 2002 U.S. Dist. LEXIS 19949 (E.D.N.Y. Sept. 3, 2002)............10

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Medical System, Inc.,*
    797 F.2d 85 (2d Cir. 1986)............................................................................................16

*Home Insurance Co. v. Liberty Mutual Insurance Co.,*
    No. 87 Civ. 0675 (SWK), 1990 U.S. Dist. LEXIS 15762 (S.D.N.Y. Nov. 20, 1990)........7

*Maryland Cas. Co. v. W.R. Grace & Co.,*
    No. 88 Civ. 4337 (JSM), 1996 U.S. Dist. LEXIS 868 (S.D.N.Y. Jan. 29, 1996).............13

*McNeill v. New York City Housing Authority,*
    719 F. Supp. 233 (S.D.N.Y.1989) .................................................................................16

*Miller v. Silbermann,*
    832 F. Supp. 663, 672 (S.D.N.Y. 1993) ........................................................................16

*New England Petroleum Corp. v. Federal Energy Admin.,*
    71 F.R.D. 454 (S.D.N.Y. 1976) .....................................................................................15

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ......................................................................................13

*In re Oceana International, Inc.,*
    49 F.R.D. 329 (S.D.N.Y. 1970) .....................................................................................13

**CASES**                                                                                                    **PAGE(s)**

*Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*,
    725 F.2d 871 (2d Cir. 1984).................................................................................7

*Sam Fox Publishing Co. v. United States*,
    366 U.S. 683 (1961)....................................................................................12

*Spangler v. Pasadena City Board of Education*,
    552 F.2d 1326 (9th Cir. 1977) ......................................................................16

*In re Tribune Co. Fraudulent Conveyance Litigation*,
    Consolidated MDL Numbers 11 MD 2296 (RJS) and 12 MC 2296 (RJS),
    2013 U.S. Dist. LEXIS 72104 (S.D.N.Y. May 14, 2013)............................7, 10

*Triax Co. v. TRW, Inc.*,
    724 F.2d 1224 (6th Cir. 1984) ......................................................................14

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528 (1972)....................................................................................15

*United States v. New York*,
    820 F.2d 554 (2d Cir. 1987).............................................................................7

*WildEarth Guardians v. National Park Serv.*,
    604 F.3d 1192 (10th Cir. 2010) ....................................................................13

**STATUTES**

17 U.S.C. § 106...................................................................................................3

17 U.S.C. § 201(d) ..............................................................................................3

Fed. R. Civ. P. 24(a) ....................................................................................16, 17

Fed. R. Civ. P. 24(a)(2).................................................................................1, 6

Fed. R. Civ. P. 24(a)(3).........................................................................................1

Fed. R. Civ. P. 24(b) ....................................................................................16, 17

Fed. R. Civ. P. 24(b)(1)(B) ...............................................................................16

**TREATISE**                                                                                    **PAGE(s)**

1 P. Goldstein, *Goldstein on Copyright* § 5.1.1 (3d ed. 2012).......................................................12

7B Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1799 ..............................7

7C Wright, Miller and Kane, Federal Practice and Procedure: Civil 3d § 1908.2 ........................13

Sony/ATV Music Publishing LLC and the EMI Music Publishing Companies [1] (collectively, the "Publishers") respectfully submit this memorandum in support of their motion, pursuant to FRCP 24(a)(2) to intervene in the above-captioned matter, *nunc pro tunc* to September 13, 2013.

## PRELIMINARY STATEMENT

The Publishers seek to intervene, *nunc pro tunc*, in accordance with this Court's direction, in an Endorsed Order on a letter submitted to this Court on September 25, 2013 by Publishers' counsel. However, the Publishers reasonably understood that, in accordance with two prior Endorsed Orders on letters submitted by Publishers on September 12, 2013 and September 13, 2014, they had already moved by letter motion to intervene (solely to oppose Pandora's motion for summary judgment and to the relief apparently being contemplated by the Court). The Publishers also reasonably understood that the Court had, in its Decision and Order dated September 17, 2013, *sub silentio* granted their motion to intervene, albeit while rejecting the arguments that they advanced.

Pursuant to Rule 24(a)(3) of the Federal Rules of Civil Procedure, the Publishers are entitled to intervene as of right because this Court's Decision and Order of September 17, 2013 materially and adversely restricts and reduces their rights of copyright ownership. Absent intervention, Publishers do not have a clear path to fully protecting their rights, including having a clear and absolute right of appeal. Publishers' rights and interests have not been fully or adequately protected by ASCAP, which has distinctly different interests than Publishers. On the contrary, ASCAP, as an institution, is not so secretly delighted with the Court's decision because

---

[1] EMI consists of various music publishing companies, some of which are members of ASCAP, some of which are members of BMI and some of which are affiliated with SESEAC. All of the EMI publishing companies are commonly referred to collectively as EMI Music Publishing, but there is no actual legal entity by that name.

it increases the rights ASCAP has available to license, thereby increasing its potential revenue base.   ASCAP makes more money licensing new media rights than it makes simply administering royalty payments derived from direct licenses.   It is Publishers' rights, not ASCAP's, that are negatively affected by this Court's Decision and Order and it is therefore Publishers that have the most compelling interest in protecting their rights.

As the facts set forth in detail in the accompanying Declaration of Donald S. Zakarin confirm, Publishers' motion to intervene was timely made.   As soon as it became clear that this Court was contemplating granting relief that materially diminished the rights of copyright ownership of the Publishers, limiting the divisibility of copyrights expressly provided under the Copyright Act (through the interpretation of an anti-trust consent decree to which Publishers are not parties and in a proceeding in which they are not parties), Publishers immediately requested the opportunity to intervene and to have their arguments heard.

Because it now appears that, contrary to Publishers' understanding, this Court may not have considered Publishers prior submissions as a motion to intervene, they now seek intervention *nunc pro tunc* effective as of the date on which they expressly advised the Court, in response to its Endorsed Order of September 12, 2013, that they were seeking intervention to protect their valuable copyright rights.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The relevant procedural history and factual background relating to this motion is set forth in the accompanying declaration of Donald S. Zakarin and will only be summarized herein.

This Court has jurisdiction over an anti-trust consent decree originally obtained by the United States of America against ASCAP in 1941 and amended several times since that time. The most recent iteration of the consent decree is known as AFJ2.  Pursuant to AFJ2, this Court

also sits as a rate court to determine the rates and terms of licenses sought by prospective licensees of music from ASCAP when agreement cannot be reached by ASCAP and the prospective licensee. This is a rate court proceeding involving ASCAP and Pandora Media, Inc., which requested a license from ASCAP.

The Publishers, who own enormously valuable catalogues of copyrighted musical compositions, are not parties to this proceeding and were not parties to the anti-trust action brought by the Department of Justice or to AFJ2. The Publishers own exclusive rights in their copyrighted compositions pursuant to 17 U.S.C. §106, including the exclusive right to issue public performing rights licenses or to authorize others to do so. The Publishers' rights may be exercised in whole or in part and the Publishers may authorize others to exercise all or some of their rights as copyrights are expressly divisible (17 U.S.C. § 201(d)).

Pandora moved this Court for summary judgment, claiming that it was entitled to what it called a Consent Decree License In Effect. Because the Publishers had withdrawn certain "new media rights" from ASCAP and had instead directly licensed those rights to Pandora, the Publishers sought clarification from Pandora as to whether Pandora's motion sought to either declare the Publishers' withdrawal of rights from ASCAP a nullity or to disavow the direct licenses entered into. In submissions to this Court (attached to the accompanying Zakarin), Pandora expressly represented that its motion neither sought to challenge or nullify the Publishers' withdrawal of new media rights from ASCAP nor to disavow the direct licenses.

Based on such express written representations, Publishers did not seek to intervene on Pandora's motion. Indeed, Pandora expressly advised the Court that there was no basis for the Publishers to intervene because its motion did not seek any relief that negatively implicated the Publishers' rights.

However, on September 5, 2013, this Court issued a series of questions to Pandora and ASCAP which suggested that the Court might be considering issuing relief that Pandora expressly stated it was not seeking.  On September 11, 2013, at oral argument of such questions, it became clear that the Court was of the view that the text of AFJ2 precluded ASCAP from accepting anything less than a grant of all public performance rights (non-exclusively) from copyright owners.  Pandora's counsel, consistent with his prior written representations to the Court and to the Publishers, repeatedly stated that he was not seeking the "broader" relief suggested by the Court's questions and that the Court appeared to be considering granting.

Once it became clear at oral argument on September 11, 2013 that the Court might be contemplating issuing an Order that would materially restrict the Publishers' exclusive copyright rights (by barring them from granting ASCAP only a portion of the public performance rights in their copyrighted compositions, thereby effectively altering the divisibility of copyright provided under Section 201(d) through an interpretation of AFJ2), the Publishers immediately wrote to the Court, on September 12, 2013, expressing their concern and seeking to protect their own rights. The Court issued an Endorsed Order on September 12, 2013 requiring the Publishers to identify the relief that they sought with respect to Pandora's motion by noon the next day.  In response to the Court's direction, the Publishers duly submitted a letter motion on September 13, 2013 (in accordance with this Court's rules) seeking intervention.

On the same date (September 13, 2013), the Court issued an Endorsed Order as follows:

**ENDORSEMENT: SATV and EMI having requested the opportunity to intervene in order for the Court to consider the arguments presented in this letter in connection with the pending summary judgment motion, any**

**opposition shall be filed by Monday, September 16. (Signed by Judge Denise L. Cote on 9/13/2013) (gr)."**[2]

Pandora duly filed its opposition to Publishers' letter motion to intervene on September 16.[3]  On September 17, 2013, the Publishers filed a brief reply to Pandora's opposition.

On September 17, 2013, this Court issued a Decision and Order granting Pandora the very relief on its motion for summary judgment that Pandora had expressly stated it was not seeking.   The Court determined that the text of AFJ2 required that ASCAP only accept a complete grant of all public performance rights from members and that it could not accept partial grants of rights.  Such Decision and Order effectively and retroactively nullified the Publishers' withdrawal of their "new media" rights from ASCAP so long as they granted ASCAP any rights at all in the same compositions.  In its Decision and Order, the Court expressly acknowledged consideration of one of the arguments advanced by both Publishers and Universal, namely that the Court should invite the Department of Justice to weigh in on the meaning of AFJ2.   The Court rejected this argument and apparently rejected all other arguments advanced by Publishers.

While addressing and rejecting at least one of the arguments made by Publishers, the Court's Decision and Order did not expressly indicate any ruling on the Publishers' (and Universal's) request for intervention.  Having expressly noted that Publishers had requested

---

[2] It appears that instead of docketing the foregoing Endorsed Order on my September 13, 2013 letter, the clerk mistakenly docketed an additional copy of the Court's Endorsed Order on the Publishers September 12, 2013 letter.   The endorsed Order on the September 12, 2013 letter stated as follows: **"ENDORSEMENT: If counsel wish to be heard in connection with the pending summary judgment motion, they should identify the relief they seek no later than Friday, September 13, at noon. (Signed by Judge Denise L. Cote on 9/12/13) (Gibson, Patrick)."**

[3] Pandora also opposed the motion to intervene filed by Universal Music Publishing Group (the Court having similarly Endorsed Universal's letter as follows: "This letter is construed as an application to intervene for the purpose of making the two requests in this letter.   Any opposition to the application to intervene is due Monday, September 16, 2013").

intervention and having invited any opposition to the request be filed by Pandora and having specifically addressed at least one of the arguments raised, Publishers reasonably understood the Court's Decision and Order to have effectively granted intervention and to have rejected the arguments raised.

However, because of the absence of any formal ruling on the application to intervene, on September 25, 2013, Publishers wrote to the Court seeking confirmation that their understanding that the Court's Decision and Order had granted intervention was correct.   However, the Court's Endorsed Order on the September 25, 2013 letter indicated that, contrary to Publishers' understanding, the Court had not, in fact, either granted or denied intervention.  Rather, the Court directed Publishers to promptly file a formal motion for intervention (albeit while acknowledging that the Court had already considered Publishers' arguments).[4]

Because this Court has already issued its Decision and Order and because the Court has now required a more formal motion to intervene that reflected in Publishers' letter motion of September 13, 2013, Publishers now move to intervene *nunc pro tunc.*

## ARGUMENT

I.  **THE PUBLISHERS EASILY MEET THE LIBERAL STANDARD FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a).**

Rule 24(a)(2) provides that a party may intervene as of right if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "To satisfy this standard, 'an intervener must show that: (1) the application is timely; (2) the

---

[4] As noted in the Zakarin Declaration, the fact that the Court considered Publishers' arguments is not sufficient.  The Publishers are entitled to seek review of this Court's Decision and Order and such right of review can be and should be assured by intervention.

applicant claims an interest relating to the property or transaction which is the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party." *In re Tribune Co. Fraudulent Conveyance Litig.*, Consol. MDL Nos. 11 MD 2296 (RJS) and 12 MC 2296 (RJS), 2013 U.S. Dist. LEXIS 72104, at *251-251 (S.D.N.Y. May 14, 2013) (quotation omitted), *citing Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir. 1984); *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87 Civ. 0675 (SWK), 1990 U.S. Dist. LEXIS 15762 (S.D.N.Y. Nov. 20, 1990). Intervention "should be liberally allowed." 7B WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1799. The Publishers clearly meet this burden.

A. **The Publishers Timely Moved To Intervene.**

The determination of timeliness of a motion to intervene is committed to the discretion of the trial court and must be based on all of the circumstances of the case. *Dow Jones & Co. v. United States Dep't. of Justice*, 161 F.R.D. 247, 251 (S.D.N.Y. 1995), *citing Farmland Dairies v. Commissioner of New York State Dep't. of Agric. & Mkts.*, 847 F.2d 1038, 1043-44 (2d Cir. 1988). Among the factors a court may take into account when determining whether a motion to intervene is timely are "(1) the length of time the applicant knew or should have known of his [or her] interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to applicant if the motion is denied; and (4) presence of unusual circumstances militating for or against a finding of timeliness." *Id.* at 251, *citing United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987).

Here, the Publishers raised concerns as to the scope of the relief that Pandora was seeking in its summary judgment motion almost immediately after receiving a complete, unredacted copy

of the motion in June 2013.  They promptly sought clarification from Pandora that Pandora was not seeking to nullify their withdrawal of rights from ASCAP and/or disavow the direct licenses entered into between them and Pandora.  Based on Pandora's specific written representations that it was neither challenging the Publishers' withdrawal rights nor disavowing the licenses, the Publishers determined that their rights were not at issue in the Proceeding and thus did not seek to intervene at that time.  Indeed, Pandora repeated its position that intervention was not proper because it was not seeking any relief that negatively impacted Publishers.

However, on September 11, 2013, the Court made it clear at oral argument that it was considering issuing an order granting relief very different than the relief that Pandora expressly stated it was seeking in its motion.  The relief that the Court made clear it was contemplating would have the effect of restraining the Publishers' right to grant only some of their public performance rights to ASCAP – an order that would be plainly at odds with their exclusive and divisible rights under the Copyright Act and that was not even requested by Pandora in its motion (and that Pandora, in fact, expressly disavowed seeking).  During argument, Pandora tried to dissuade the Court from issuing such relief and instead to address solely its "Consent Decree License in Effect" argument.

Confronted with the apparent direction being taken by the Court – which presented a sea change in the impact on Publishers' rights from the limited relief that Pandora had represented its motion was seeking – the Publishers wrote to the Court the very next day (September 12) expressing their concerns.  That same evening, the Court issued an Endorsed Order directing that the Publishers identify by noon the next day (September 13) the precise relief that they were seeking.  The Publishers complied, submitting a letter brief in accordance with this Court's page limits on letters and in accordance with this Court's rules permitting motions to be made by letter,

requesting to intervene. Publishers reasonably understood that, consistent with the Court's Endorsed Order requiring them to identify the relief that they sought with respect to Pandora's motion, their letter was a motion to intervene in compliance with this Court's individual rule 3(I).

The Court's Endorsed Order on such letter, requiring Pandora to submit any opposition to such application to intervene by Monday, September 16, 2013, is consistent with Publishers' understanding that they were seeking, and the Court considered that they were seeking, to intervene. Pandora plainly understood the Endorsed Order the same way because it opposed intervention by both Publishers and Universal. Publishers then filed a brief reply to Pandora's opposition on September 17, 2013, before this Court issued its Decision and Order.

Thus, the length of time between when the Publishers knew of that this Court was contemplating granting relief that would negatively affect their copyright interests and when they sought to intervene was less than two days. Prior thereto, there was no basis on which to intervene because, as Pandora had represented in writing, it was not seeking any relief that would negatively impact Publishers' rights. On the contrary, Pandora expressly represented that it was not seeking to nullify Publishers' withdrawal of rights from ASCAP or disavow the direct licenses it entered into with Publishers.

Because the Publishers acted virtually immediately upon discovering that their rights were being threatened, there was no "delay" which could have caused any prejudice to any party and, in any event, Pandora had an opportunity to and did oppose the Publishers' intervention motion. There is also no prejudice to Publishers' intervention now as they are not seeking reargument of the motion and the Court has already acknowledged considering the arguments Publishers have made. Thus, the effect of intervention is simply to assure that Publishers –

whose rights are the only rights being negatively affected by this Courts' Decision and Order – will have an opportunity to seek review of the Decision and Order.[5]

Even if the Court were to conclude that the Publishers' September 13 letter did not constitute a formal motion, the Publishers can and should be permitted to now move to intervene *nunc pro tunc* to the date of that letter. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 2013 U.S. Dist. LEXIS 72104 (granting motion to intervene as of right *nunc pro tunc* to the filing date of the plaintiffs' action where movant only later became aware that plaintiff would refuse to represent its interest); *Fleet Capital Corp. v. Merco Joint Venture, LLC,* No. 02 CV 0279(ILG), 2002 U.S. Dist. LEXIS 19949, at *14 (E.D.N.Y. Sept. 3, 2002) (granting motion *nunc pro tunc* to date prior to voluntary dismissal of action by plaintiff). Granting the motion *nunc pro tunc* will not prejudice Pandora because the Publishers are not seeking by the motion to have this Court reconsider its summary judgment decision, nor to delay the upcoming trial. Rather, the Publishers are merely trying to assure their right to appeal, and denying them such right would have the effect of depriving them of the right to seek to protect their vital property interests, and due process. *See City & Borough of Juneau v. Ctrs. for Medicare & Medicaid Servs.*, No. 3:04-cv-152JWS, 2007 U.S. Dist. LEXIS 12309, at *6-12 (D. Alaska Feb. 21, 2007) (granting motion to intervene as of right after court had granted summary judgment to plaintiff, where movant did not request reconsideration of summary judgment decision, but rather sought to intervene for the limited purpose of appealing that decision).

---

[5] As shown in the Zakarin Declaration, ASCAP does not have even close to the same interest as Publishers. On the contrary, this Court's Decision and Order is actually favorable to ASCAP. The only ones harmed by the Decision and Order are copyright owners, including Publishers.

**B.    The Publishers' Exclusive Copyright Rights Have Been
Truncated By the Court's Summary Judgment Order.**

The second requirement for intervention under Rule 24 -- that the movant claim an interest relating to the property or transaction that is the subject of the action – is indisputable. Indeed, the Court's Decision and Order acknowledges such interest, albeit viewing the impact as "ancillary," which Publishers believe significantly understates the negative impact of the Decision and Order.

As set forth in the Publishers' September 13 letter motion, while Pandora expressly disdained seeking any such relief, at the oral argument, the Court made clear that it was poised to, and ultimately did, issue a Decision and Order compelling the Publishers to convey all public performance rights in their copyrights to ASCAP if they convey any rights.  That such compulsion may have technically been effected by regulating ASCAP's ability to accept limited grants of rights is no comfort to Publishers whose rights are thereby limited.  Such Decision and Order has the effect of depriving the Publishers of exclusive rights provided them under Section 106 of the Copyright Act.  It was for this reason that the Publishers sought to intervene on September 13 (prior to the issuance of the Decision and Order), and seek now to intervene *nunc pro tunc* to that date to preserve their right to address these issues with the Court of Appeals.

Because the copyright owners are not parties, a fundamental point was overlooked:  only the copyright owners – here the Publishers – are vested with exclusive rights under Section 106 of the Copyright Act, have the right to license their copyrights or authorize others to do so on their behalf, in whole or in part.  Copyrights are divisible and neither contract law nor copyright law requires copyright owners to grant any or all of their rights to anyone (other than with

respect to compulsory mechanical licenses).[6]   A copyright owner can contract with regard to its ownership rights, in whole or in part, as it chooses.

AFJ2 does not address the exclusive rights of copyright owners or modify the Copyright Act. The owners were not parties to the anti-trust action or consent decrees.[7]  AFJ2 is not addressed to the relationship between members and ASCAP, except to impose certain restrictions on ASCAP. It nowhere restricts the rights of the copyright owner to license.

Because the Court's focus in its summary judgment decision was on the meaning of the term "works" in AFJ2, it failed to consider that ASCAP's authority to issue licenses derives not from the identity of the **works** in ASCAP's repertory but instead from the **rights in works** granted by copyright owners as embodied in the definition of "ASCAP Repertory" in AFJ2, which specifically states that "'ASCAP repertory' means those works **the right of public performance of which ASCAP has or hereafter shall have** <u>**the right to license at the relevant point in time.**</u>"[8]  As this provision makes clear, it is the right of public performance that ASCAP has the right to license in the works that is critical, not the identity of the works. This provision is necessary to harmonize the protection of the rights granted copyright owners under the Copyright Act, which specifically includes their right to control the grant of license rights in their copyrights, with the obligations of ASCAP to issue licenses on request imposed

---

[6] *See* 1 P. Goldstein, *Goldstein on Copyright* §5.1.1 (3d ed. 2012) (copyright owners may "grant exclusive licenses to subdivisions of individual rights, such as serialization rights and the rights to reproduce the work in hardcover and paperback editions," and "may also give a nonexclusive license to exploit any one or more of these rights or any subdivision of them").

[7] *See Sam Fox Publ'g Co. v. United States*, 366 U.S. 683, 690 (1961), which noted that as non-parties, music publisher were not bound by the consent judgment.

[8] The provision is consistent with the well-established rule that an agent cannot convey greater rights than it has been granted.

pursuant to AFJ2. Any other interpretation would divest copyright owners of their exclusive rights through an anti-trust regulation of ASCAP to which they are not parties.

**C.**     **The Publishers' Rights to Protect Their Copyright Rights**
          **May Be Impaired If They Are Not Permitted to Intervene.**

The next element – impairment – presents a "minimal burden" for an individual seeking to intervene. *WildEarth Guardians v. National Park Serv.*, 604 F.3d 1192 (10th Cir. 2010). Rule 24 permits intervention by anyone who might be "practically disadvantaged" by the disposition of the action. 7C Wright, Miller and Kane, *Federal Practice and Procedure*: Civil 3D § 1908.2; *see also In re Oceana Int'l., Inc.*, 49 F.R.D. 329, 332 (S.D.N.Y. 1970), *citing Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967); *Maryland Cas. Co. v. W.R. Grace & Co.*, No. 88 Civ. 4337 (JSM), 1996 U.S. Dist. LEXIS 868, at *6 (S.D.N.Y. Jan. 29, 1996). The impairment element does not require the would-be intervenor to go so far as to show that *res judicata* principles would affect any later suit he might bring. *Maryland Cas. Co.*, 1996 U. S. Dist. LEXIS 868, at *6. Rather, the rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest.

This is clearly the situation presented here. On September 12, the Court requested that the Publishers identify the relief they were seeking. On September 13, the Publishers moved by letter to intervene. The Court then issued its summary judgment order on September 17 in which it addressed at least one of the arguments advanced by the Publishers in their intervention application (and as the Court has stated, it also considered all of their other arguments, apparently rejecting them), but did not expressly rule on the request to intervene. Upon the Publishers request for clarification, the Court advised that it had "considered [the Publisher's] arguments in rendering" its summary judgment decision, but still did not issue a decision on

whether the Publishers have a right to intervene.  Instead, it invited Publishers to make a formal motion to intervene, despite Publishers' understanding that they had already done so.

Unless and until the Court either grants or denies the Publishers' motion to intervene, the Publishers will not have a certain right to appeal not subject to challenge, and without such certainty, Publishers may end up being deprived of a due process right to protect their own valuable exclusive copyrights.  *See Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984) (granting motion to intervene as of right to patent owner in infringement suit after court had granted summary judgment finding patent invalid, and where original plaintiff, the losing party, had decided not to appeal, because the "only way [movant] could protect his interest effectively would be to seek appellate review of the district court decision," and plaintiff's "decision not to file a notice of appeal left [movant] without a mechanism to seek appellate review of the summary judgment . . ." decision).  The Publishers are entitled to intervene in order to fully and properly protect their rights.

### D.  **ASCAP Cannot Adequately Represent the Publishers**.

The Publishers' interests in the controversy before this Court are not adequately represented by the named parties.

It is obviously in Pandora's interest to keep the copyright owners out of this case so that it can run roughshod over their rights without opposition.  Pandora's demonstrated objective is to pay as little as possible to the owners of the copyrights in, and the writers of, the music that forms the backbone of its business, including to the Publishers and the songwriters whom they represent.  ASCAP may have an interest in obtaining a higher rate than Pandora is anxious to pay but ASCAP does not have any interest in receiving less than total grants of public performance rights from copyright owners.  Its acceptance of that reality in its revised Compendium was

hardly something it sought or wanted but was simply an acknowledgement of reality. This Court's Decision and Order is actually cause for celebration by both ASCAP and Pandora. The only loser with respect to this Decision and Order are copyright owners.

ASCAP has a very different set of institutional interests than the copyright owners. It may be in ASCAP's interest to lose on Pandora's motion for summary judgment as it increases the scope of rights it has to license, increasing its revenues and increasing the revenue base against which it can apply and recoup costs. Simply put, ASCAP charges and makes much more when it licenses all rights than when direct licenses are issued by copyright owners and ASCAP merely administers royalty collections and payments. Publishers and writers make more through direct licenses, even where the license rate is no different than that which ASCAP can obtain because of the reduced fees payable to ASCAP. Thus, ASCAP is not so secretly delighted with this Court's Decision and Order.

The Publishers' burden on this final element "'should be treated as minimal,'" *New England Petroleum Corp. v. Federal Energy Admin.*, 71 F.R.D. 454, 458 (S.D.N.Y. 1976) (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538, n. 10 (1972)), with the weight of the responsibility for demonstrating adequate representation of the Publishers falling on the named party. *Miller v. Silbermann,* 832 F. Supp. 663, 672 (S.D.N.Y. 1993), *citing CBS, Inc. v. Snyder*, 798 F. Supp. 1019 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d Cir. 1993). The "Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate." *FTC v. First Capital Consumer Membership Servs., Inc.*, 206 F.R.D. 358, 364 (W.D.N.Y. 2001), *citing Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 (1972).

The Publishers have more than "minimally" established the inadequacy of representation and the appropriateness of their right to intervene in these proceedings as a matter of right under

Rule 24(a). Their interests in ensuring that their exclusive copyright rights are protected and not impaired, truncated, or otherwise undermined as a consequence of their absence is clear.

## II.   ALTERNATIVELY, THE PUBLISHERS SHOULD BE PERMITTED TO INTERVENE PERMISSIVELY UNDER RULE 24(b).

Federal Rule of Civil Procedure 24(b)(1)(B) authorizes the Court to permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." This method of intervention is often referred to as "permissive intervention." Courts consider substantially the same factors under Rule 24(b) as they do under Rule 24(a). Additional relevant factors "'include the nature and extent of the intervenors' interests,'" the degree to which those interests are "'adequately represented by other parties,'" and "'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) *quoting Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (footnotes omitted).

Here, the Publishers' claim – that they are entitled under the Copyright Act to grant to ASCAP only some of their public performance rights and are not obligated to grant to a licensing agent all or none of their rights – implicates the same questions of law and fact as the claims of Pandora, as interpreted by the Court. The common question of law and fact inquiry is a slight burden: "Rule 24(b)(2)'s provisions are satisfied 'where a single common question of law or fact is involved, despite factual differences between the parties.'" *Miller*, 832 F. Supp. at 673, *quoting McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989). The Publishers clearly meet the commonality burden for purposes of Rule 24(b) permissive

intervention. Thus, in the absence of a finding of Rule 24(a) "intervention as of right," the Court should authorize Publishers to intervene under Rule 24(b).

## CONCLUSION

Accordingly, the Publishers respectfully request that their motion to intervene be granted *nunc pro tunc* to the date of their letter motion, September 13, 2013.

Dated:  New York, New York
        September 27, 2013

                              PRYOR CASHMAN LLP


                              By:  _____/s/_____
                                   Donald S. Zakarin
                                   Frank P. Scibilia
                                   Erich C. Carey
                              7 Times Square
                              New York, New York 10036-6569
                              Telephone:  (212) 421-4100
                              Facsimile:  (212) 326-0806